KENDRA S. CANAPE (SBN: 259641)
kcanape@grsm.com
JOEL D. BRODFUEHRER (SBN: 343092)
jbrodfuehrer@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614
Telephone: (619) 255-6950
Facsimile: (619) 474-2060

Attorneys for Defendant
**IQ DATA INTERNATIONAL, INC.**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

NYCOLE A. BERKELEY,

Plaintiff,

vs.

IQ DATA INTERNATIONAL INC., and SOUTH STREET FAMILY APARTMENTS, L.P. d/b/a SOUTH HILLS CROSSING APARTMENT,

Defendants.

Case No.: 5:23-cv-01442-BLF

**DEFENDANT IQ DATA INTERNATIONAL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**[Fed. R. Civ. P. 12(b)(1)]**

The Honorable Beth Labson Freeman
Courtroom: 3
Floor: 5
Date: October 19, 2023
Time: 9:00 a.m.

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT** on October 19, 2023, at 9:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 3, 5th Floor, District Judge Beth Labson Freeman presiding, at the San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, Defendant IQ Data International, Inc. ("IQ Data" or "Defendant"), will and hereby does move the Court, pursuant to Fed. R. Civ. P.

12(b)(1), for an Order dismissing the Complaint by Nycole A. Berkeley ("Plaintiff") in its entirety.

Plaintiff Nycole A. Berkeley alleges in her Complaint that Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C § 1692, *et seq*. ("FDCPA") and the California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq*. ("RFDCPA"). For the reasons set forth in the Memorandum of Points and Authorities, Plaintiff lacks Article III standing. This Court should therefore dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1).

The Motion is based on this Notice of Motion, the Memorandum of Law submitted together with the Motion, Declaration of Joel Brodfuehrer, the Court's file, and such additional facts and argument as will be presented at the hearing.

Dated: May 22, 2023

GORDON REES SCULLY MANSUKHANI, LLP

By: /s/ *Joel D. Brodfuehrer*
Joel D. Brodfuehrer
Kendra S. Canape
Attorneys for Defendant
IQ DATA INTERNATIONAL, INC.

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES.... .... 4**

**ISSUES TO BE DECIDED (LR 7-4(a)(3)).... .. 7**

**STATEMENT OF FACTS AND PROCEDURAL HISTORY 7**

**I. LEGAL STANDARD 9**

**II. PLAINTIFF LACKS ARTICLE III STANDING 9**

**A. A FDCPA Violation, In and of Itself, Cannot Confer Standing 10**

**B. Step One: The Complaint Does Not Allege a Conrete (or Real) Injury Under Spokeo II Framework 11**

**1. Plaintiff's Alleged Harm Has No "Close Relationship" to Historical or Common-Law Analogs Deference. 11**

**2. The Relevant FDCPA Provisions Were Not Designed to Protect Plaintiff's Interests Event. 16**

**C. Step Two: The Alleged Violations Did Not Cause the Harm the FDCPA is Designed to Vindicate 17**

**III. THE COMPLAINT MUST BE DISMISSED IN ITS ENTIRETY 18**

**CONCLUSION 18**

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Skagit Bonded Collectors, LLC*, 836 F. App'x 544 (9th Cir. 2020) .......... 11, 12, 17

*Alarcon v. Vital Recovery Servs., Inc.*, 2018 WL 6266558 (S.D. Cal. Nov. 30, 2018) .......... 14

*Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776 (9th Cir. 2018) .......... 10, 14

*Bassett v. Credit Bureau Servs., Inc.*, 60 F.4th 1132 (8th Cir. 2023) .......... 12, 16

*Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853 (9th Cir. 2017) .......... 14

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115 (9th Cir. 2010) .......... 9

*Donohue v. Quick Collect, Inc.*, 592 F.3d 1027 (9th Cir. 2010) .......... 17

*Farmer v. Optio Sols., LLC*, 2022 WL 3974261 (N.D. Cal. Aug. 31, 2022) .......... Passim

*Fleming v. ProVest California LLC*, 2021 WL 6063565 (N.D. Cal. Dec. 22, 2021) .......... Passim

*Frank v. Autovest*, 961 F.3d 1185 (D.C. Cir. 2020) .......... 15

*Gatchalian v. Atl. Recovery Sols., LLC*, 2022 WL 3754523 (N.D. Cal. Aug. 30, 2022) .......... 10

*Gunn v. Thrasher, Buschmann & Voelke, P.C.*, 982 F.3d 1069 (7th Cir. 2020) .......... 12

*Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802 (9th Cir. 2001) .......... 18

*Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458 (6th Cir. 2019) .......... 12

*Kamel v. Hibbett, Inc.*,
2022 WL 2905446 (C.D. Cal. July 22, 2022)........................................14

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ........................................................................9

*Kola v. Forster & Garbus LLP*,
2021 WL 4135153 (S.D.N.Y. Sept. 10, 2021)........................................16

*Lenzini v. DCM Serrvices, LLC*,
2021 WL 2139433 (N.D. Cal. May 26, 2021) ....................................9, 15

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........................................................................10

*Lupia v. Medicredit, Inc.*,
8 F.4th 1184 (10th Cir. 2021)............................................................14

*Maddox v. Bank of New York Mellon Tr. Co., N.A.*,
19 F.4th 58 (2d Cir. 2021) .........................................................12, 13

*Musson Theatrical, Inc. v. Fed. Exp. Corp.*,
89 F.3d 1244 (6th Cir. 1996) ............................................................18

*Nyberg v. Portfolio Recovery Assocs.*, LLC,
2023 WL 2401067 (9th Cir. Mar. 8, 2023)..........................................10

*Pierre v. Midland Credit Mgmt., Inc.*,
29 F.4th 934 (7th Cir. 2022)..............................................................16

*Rendon v. Cherry Creek Mortg., LLC*,
2022 WL 17824003 (S.D. Cal. Dec. 20, 2022) ......................................11

*Robins v. Spokeo, Inc.*,
867 F.3d 1108 (9th Cir. 2017) .....................................................Passim

*Samano v. LVNV Funding, LLC*,
2022 WL 1155910 (E.D. Cal. Apr. 19, 2022).........................................12

*Shah v. Quan*,
2021 WL 9816614 (N.D. Cal. June 15, 2021) .........................................9

*Shields v. Pro. Bureau of Collections of Maryland, Inc.*,
55 F.4th 823 (10th Cir. 2022)............................................................16

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

*Smith v. GC Servs. Ltd. P'Ship*,
986 F.3d 708 (7th Cir. 2021) ........................................ 18

*Spokeo, Inc. v. Robins*,
578 U.S. 330, 339 (2016) ........................................ Passim

*Tailford v. Experian Info. Sols., Inc.*,
26 F.4th 1092 (9th Cir. 2022) ........................................ 10

*Takano v. Nelson*,
2020 WL 3403056 (W.D. Wash. June 19, 2020) ........................................ 15

*Tosco Corp. v. Communities for a Better Env't*,
236 F.3d 495 (9th Cir. 2001) ........................................ 9

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 ........................................ Passim

*Trichell v. Midland Credit Mgmt., Inc.*,
964 F.3d 990 (11th Cir. 2020) ........................................ 16

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ........................................ 9

*Wadsworth v. Kross, Lieberman & Stone, Inc.*,
12 F.4th 665 (7th Cir. 2021) ........................................ 12

*Warren v. Fox Fam. Worldwide*, Inc.,
328 F.3d 1136 (9th Cir. 2003) ........................................ 18

**Statutes**

15 U.S.C § 1692 ........................................ Passim
Cal. Civ. Code § 1788 ........................................ Passim

**Rules**

Fed R. Civ. P. 12(b)(1) ........................................ Passim

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendant IQ Data International, Inc. presents this Memorandum of Points and Authorities in support of its motion to dismiss Plaintiff Nycole A. Berkeley's Complaint for Damages, pursuant to Fed. R. Civ. P. 12(b)(1). The issues presented herein pertain to Defendant's entitlement to dismissal of Plaintiff's claims pursuant to the Fair Debt Collection Practices Act, 15 U.S.C § 1692, *et seq*. and the California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq*., together, with any such other and further relief as this Court deems proper and just.

## ISSUES TO BE DECIDED
## (Local Rule 7-4(a)(3))

Should the Complaint for Damages (the "Complaint") be dismissed in its entirety for lack of Article III jurisdiction?

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On March 28, 2023, Plaintiff Nycole A. Berkeley ("Plaintiff") filed this lawsuit alleging that Defendant IQ Data International, Inc. ("IQ Data" or "Defendant") violated the Fair Debt Collection Practices Act, 15 U.S.C § 1692, *et seq*. (the "FDCPA" or "Act") and the California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq*. (the "RFDCPA"). *See* Dkt. 1, Complaint ("Compl."), attached as Exhibit A to the Declaration of Joel Brodfuehrer ("Brodfuehrer Decl.").

The Complaint alleges that, sometime "[i]n 2022," Plaintiff vacated her apartment unit located at South Hills Crossing Apartment ("South Hills"), a Section 8 multifamily housing complex located at 313 South St San Luis Obispo, California 94301 (the "Apartment"). Compl. ¶¶ 7–8. The Complaint admits that Plaintiff owed a balance of $748 to South Hills (the "Debt") upon vacating the Apartment. *Id.* ¶ 8. "Sometime thereafter," IQ Data—a Washington corporation that sometimes collects debts owed to another (*id.* ¶ 6)—was engaged to collect on

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

the defaulted debt. *Id.* ¶ 9.

On February 8, 2023, Plaintiff received a letter from IQ Data (the "Letter") that allegedly listed a total amount of $1,910.94 for the Debt that was comprised of a principal amount of $1,612.35 with $298.59 in interest. *Id.* ¶ 10. The Complaint alleges that, "[s]ubsequently thereafter," Plaintiff contacted IQ Data to dispute "the amount" listed in the Letter and "ask[] . . . for an itemized statement." *Id.* ¶ 11. A representative of IQ Data purportedly "asked Plaintiff to pay $50 per month" while her account was under review. *Id.* ¶ 12. Plaintiff agreed to this payment plan and provided IQ Data with her credit card information for payment of the remaining balance owed. *Id.* Plaintiff—"then"—allegedly called South Hills to verify the amount of the Debt. *Id.* ¶ 13. South Hills purportedly informed Plaintiff "that [she] owed $748." *Id.*

On February 22, 2023, Plaintiff allegedly paid the amount of $748 to South Hills and was provided with a receipt "verifying that the balance was paid off." *Id.* ¶ 14. Plaintiff called IQ Data that same day and "explained that the subject debt was paid in full[.]" *Id.* ¶ 15. A representative of IQ Data purportedly informed Plaintiff her dispute was still under review. *Id.* ¶ 16. The Complaint alleges that, between February 24 and February 27, 2023, IQ Data "attempted to repeatedly take unauthorized payments from [Plaintiff's] credit card." *See id.* ¶¶ 18–21. However, the transactions were ***not*** processed as Plaintiff "froze her credit card" (*i.e.*, there was no actual or concrete harm). *Id.* ¶ 18.

Based on these operative allegations, Plaintiff asserts that IQ Data committed purely procedural violations of §§ 1692e e(2), e(10), 1692(f) and (f)(1) of the FDCPA and seeks, *inter alia*, "actual damages . . . in an amount to be determined at trial." *Id.* ¶¶ 30–46, 48(b). The Complaint also asserts a claim against IQ Data pursuant to § 1788.17 of the RFDCPA. *Id.* ¶¶ 53–56.

As detailed below, the Complaint fails entirely to allege actual harm or a

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

material risk of harm to the interests protected by the FDCPA as necessary to confer Article III jurisdiction. Plaintiff concedes the dearth of any actual or concrete injury—she was neither charged nor paid more than the $748 owed—and her generalized allegations of hypothetical intangible harm fail, as matter of law, to establish a harm that has traditionally been regarded as providing a basis for a lawsuit. Put simply, the FDCPA was not designed to protect Plaintiff's interests for alleged intangible harm flowing from IQ Data' purely procedural violations of the Act. Consequently, Plaintiff lacks Article III standing. This Court should therefore dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1).

## ARGUMENT

### I. LEGAL STANDARD

Rule 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject matter jurisdiction. *Shah v. Quan*, No. 20-CV-08536-SI, 2021 WL 9816614, at *1 (N.D. Cal. June 15, 2021) (citing FED. R. CIV. P. 12(b)(1)); *see Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). "Federal courts are of 'limited jurisdiction' and plaintiff bears the burden to prove the requisite federal subject matter jurisdiction." *Lenzini v. DCM Serrvices, LLC*, No. 4:20-CV-07612-YGR, 2021 WL 2139433, at *2 (N.D. Cal. May 26, 2021) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "[I]f he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect can be corrected by amendment." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 446 (2016) (Roberts, C.J., concurring)) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff[.]).

### II. PLAINTIFF LACKS ARTICLE III STANDING

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

"Standing is a constitutional requirement for the exercise of subject matter jurisdiction over disputes in federal court." *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (hereafter, "*Spokeo I*")). "A key component of standing is satisfaction of the injury-in-fact requirement: that Plaintiff has suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992)) (internal quotation marks omitted); *see Gatchalian v. Atl. Recovery Sols., LLC*, No. 22-CV-04108-JSC, 2022 WL 3754523, at *2 (N.D. Cal. Aug. 30, 2022) (quoting *TransUnion*, 141 S. Ct. at 2204) ("A concrete injury [] may be financial or nonfinancial, tangible or intangible, but it must be 'real, and not abstract'; it 'must actually exist.'"). Simply put, "concrete" means "real, and not abstract." *TransUnion*, 141 S. Ct. at 2203 (quoting *Spokeo I,* 578 U.S. at 340.

"Whether an injury in fact is 'concrete' depends on the kind of harm alleged." *Farmer v. Optio Sols., LLC*, No. 22-CV-00907-EMC, 2022 WL 3974261, at *2 (N.D. Cal. Aug. 31, 2022). Under *Spokeo I*, "traditional tangible harms, such as physical and monetary harms will readily qualify as concrete injuries under Article III." *Id.* (citation and internal quotation marks omitted). "Various intangible harms can also be concrete." *TransUnion*, 141 S. Ct. at 2204. "To decide whether intangible injuries are sufficiently 'concrete,' a court must consider 'both history and the judgement of Congress.'" *Farmer*, 2022 WL 3974261 at *2 (quoting *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) (hereafter, "*Spokeo II*")).

**a) A FDCPA Violation, In and of Itself, Cannot Confer Standing**

To establish Article III standing, Plaintiff "must show, *inter alia*, that he suffered a concrete injury." *Nyberg v. Portfolio Recovery Assocs.*, LLC, No. 17-35315, 2023 WL 2401067, at *1 (9th Cir. Mar. 8, 2023) (citing *TransUnion*, 141 S. Ct. at 2203). "But, 'a bare procedural violation, divorced from any concrete harm, cannot satisfy the injury-in-fact requirement of Article III.'" *Bassett v. ABM*

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

*Parking Servs., Inc.*, 883 F.3d 776, 779 (9th Cir. 2018) (hereafter, "*Bassett I*")) (quoting *Spokeo I*, 578 U.S. at 341). Stated differently, "[a] statutory violation of the FDCPA does not create a per se injury sufficient to confer standing"—"More is needed." *Farmer*, 2022 WL 3974261 at *3 (citation omitted); *see Spokeo II*, 867 F.3d at 1112 ("[E]ven when a statute has allegedly been violated, Article III requires such violation to have caused some real—as opposed to purely legal—harm to the plaintiff."); *Adams v. Skagit Bonded Collectors, LLC*, 836 F. App'x 544, 545 (9th Cir. 2020) ("Some of our prior cases have held that a plaintiff alleges a cognizable injury in fact merely by alleging a violation of the FDCPA . . . The analysis in those cases is 'clearly irreconcilable' with *Spokeo I* and has been abrogated.") (citations omitted).

**b) Step One: The Complaint Does Not Allege a Concrete (or Real) Injury Under the *Spokeo II* Framework**

Since a violation of the FDCPA by itself cannot confer standing, Plaintiff must allege a concrete injury under the Ninth Circuit's framework set forth in *Spokeo II. See e.g.*, *Farmer*, 2022 WL 3974261 at *4; *see also Rendon v. Cherry Creek Mortg., LLC*, No. 22-CV-01194-DMS-MSB, 2022 WL 17824003, at *2–3 (S.D. Cal. Dec. 20, 2022) (rejecting the argument that *Spokeo II* is irreconcilable with *TransUnion*). "At step one, courts examine 'whether the statutory provisions at issue were established to protect the plaintiff's concrete interests (as opposed to purely procedural rights),' considering 'both history and the judgement of Congress.'" *Farmer*, 2022 WL 3974261 at *4 (quoting *Spokeo II*, 867 F.3d at 1113). "At step two, courts consider 'whether the specific procedural violations alleged [] actually harm, or present a material risk of harm to' interests protected by the relevant provisions of the FDPCA." *Id.* at *6 (quoting *Spokeo II*, 867 F.3d at 1113).

**(1) Plaintiff's Alleged Harm Has No "Close Relationship" to Historical or Common-Law Analogs**

"If the harm protected by the FDCPA bears a 'close relationship' to harms that have been 'traditionally regarding as providing a basis for lawsuit,' Plaintiff

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

has sufficiently alleged a concrete injury." *Farmer*, 2022 WL 3974261 at *4 (citing *TransUnion*, 141 S. Ct. at 2209). The Complaint generally references some intangible harms that Plaintiff allegedly suffered—loss of time and incurred costs in "consulting with her attorney"—and a few common-law analogs that IQ Data purportedly committed—invasion of privacy, nuisance and intentional infliction of emotional distress—in connection with the collection of the delinquent debt. *See* Compl. ¶¶ 24–27. Such allegations, even at the pleading stage, are inadequate to confer Article III jurisdiction. Otherwise, the requirement of actual or concrete harm would be entirely abrogated by essentially alleging general agitation arising from such an occurrence. *See Gunn v. Thrasher, Buschmann & Voelke, P.C.*, 982 F.3d 1069, 1071 (7th Cir. 2020) ("Litigation is costly for both the pocketbook and peace of mind. Few people litigate for fun. Yet the Supreme Court has never thought that have one's nose out of joint and one's dander up creates a case or controversy.").

"The Ninth Circuit has not yet considered whether . . . allegations of intangible harm, without more, suffice as concrete injury-in-fact for standing in an FDCPA case in view of *TransUnion*." *Samano v. LVNV Funding, LLC*, No. 1:21-CV-01692-SKO, 2022 WL 1155910, at *2 (E.D. Cal. Apr. 19, 2022)). But, a recent, pre-*TransUnion* case strongly indicates that the Ninth Circuit would not allow for bare procedural violations to be litigated in this court. *See Adams*, 836 F. App'x at 545–47 (concluding that the doctrine of informational injury does not apply to FDCPA violations, and ultimately finding that the plaintiff had not alleged actual harm or a material risk of harm to the interests protected by the FDPCA). Such a conclusion would comport with other circuit courts. *See, e.g.*, *Bassett v. Credit Bureau Servs., Inc.*, 60 F.4th 1132, 1137 (8th Cir. 2023) (hereafter, "*Bassett II*")); *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021); *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 667 (7th Cir. 2021);

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

*Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 464 (6th Cir. 2019).

Regardless, rulings by lower courts dictate the dismissal of the Complaint in its entirety. Plaintiff alleges—in a conclusory and undeveloped fashion—that IQ Data's "harassment" and "illegal collection activities" constituted an "invasion of privacy" and a "nuisance." *See* Compl. ¶ 27. While a call by a debt collector may suffice for standing where a request for no-contact was previously communicated by the debtor (*see Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1193 (10th Cir. 2021)), no such request was made by Plaintiff. And, even if she had, the only alleged communications or interactions between Plaintiff and IQ Data subsequent to the Letter were all initiated *by* Plaintiff. Accordingly, the common-law analogs of invasion of privacy and nuisance bear no "close relationship" to Plaintiff's purported harm.

Plaintiff also claims "Defendant's wanton and malicious conduct of attempting to collect [the debt] . . . has severely impacted Plaintiff's daily and general well-being."). *See* Compl. ¶ 24. However, "[m]ere emotional distress, without more, is similarly insufficient" to establish Article III standing. *Farmer*, 2022 WL 3974261 at *4. Plaintiff fails to explain how her daily life has been impacted by what allegedly occurred in February 2023. *See Maddox*, 19 F.4th at 66 ("A perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficiently plausibly allege constitutional standing."). For the reasons discussed herein, Plaintiff does not adequately plead the existence of ***<u>any</u>*** "concrete" (or real) injury, much less one purportedly caused by IQ Data.

Plaintiff next alleges that IQ Data's "unfair, deceptive, and misleading actions" caused Plaintiff to "expend[] time and incur[] costs consulting with her attorney." *See* Compl. ¶ 25. This is not the type of harm that, by itself, can provide standing. A contrary conclusion would conflict with and undermine *TransUnion*'s

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

holding that a bare procedural violation is insufficient to confer standing. *See TransUnion*, 141 S. Ct. at 2205 (quoting *Spokeo I*, 578 U.S. at 341) ("Article III requires a concrete injury even in the context of a statutory violation.") (internal quotation marks omitted). If the time and expense in hiring an attorney were adequate, all violations of the FDCPA "would confer standing so long as Plaintiff hired an attorney to make the violations stop." *Alarcon v. Vital Recovery Servs., Inc.*, No. 15CV992-LAB (KSC), 2018 WL 6266558, at *3 (S.D. Cal. Nov. 30, 2018). That is *not* the law—"[t]he concrete harm that confers standing must be a direct result of the defendant's statutory violation, *not simply plaintiff's chosen response to the harm*." *Id.* (emphasis added); *see Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 866 (9th Cir. 2017) (holding that attorney fees and legal costs related to the underlying lawsuit "standing alone are insufficient to confer Article III jurisdiction"); *Fleming v. ProVest California LLC*, No. 21-CV-04462-LHK, 2021 WL 6063565, at *7 (N.D. Cal. Dec. 22, 2021) ("[L]egal costs associated with affirmative lawsuits cannot create Article III standing.").

Plaintiff further alleges—without any factual enhancement—that IQ Data's "harassment" and "illegal collection activities" have caused Plaintiff an "increased risk of future identity theft, harassment, depression, emotional distress, anxiety, and loss of concentration." Compl. ¶ 27. Such allegations "are mere conjecture, suggestive of a risk of harm rather than rising to the level of a concrete injury." *Kamel v. Hibbett, Inc.*, No. 8:22-CV-01096-RGK-E, 2022 WL 2905446, at *2 (C.D. Cal. July 22, 2022). Stated differently, Plaintiff merely alleges a "potential for exposure to actual injury," which "do[es] not entail a degree of risk sufficient to meet the concreteness requirement" and "is too speculative for Article III purposes." *Bassett I*, 883 F.3d at 776–77, 783; *see also Fleming*, 2021 WL 6063565 at *3 (citing *TransUnion*, 141 S. Ct. at 2210–11) ("[T]he mere risk of future harm, standing alone cannot qualify as a concrete harm[.]").

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

The facts of this case are strikingly similar to both the hypothetical found "persuasive" in *TransUnion* to explain why a risk of harm is insufficient to show a concrete injury, and *Frank v. Autovest*, 961 F.3d 1185, 1189 (D.C. Cir. 2020), an FDCPA case, that found no standing when the plaintiff alleged misrepresentations in court affidavits. In *TransUnion*, the United States Supreme Court explained that a motorist is exposed to a risk of harm when there is a reckless driver a quarter mile behind "dangerously swerving across lanes." 141 S. Ct. at 2211. Although the reckless driver has exposed the motorist "to a risk of future harm," the *TransUnion* Court explained the "risk does not materialize" if the motorist makes it home safely. *Id*. In *Autovest*, the D.C. Circuit concluded that misrepresentations in court affidavits are "certainly *capable* of causing a concrete and particularized injury" but required the plaintiff to show that the alleged misrepresentations actually had that effect. 961 F.3d at1189 (emphasis in original).

Here, like in *TransUnion* and *Autovest*, Plaintiff is home safely and has not sufficiently pled a "concrete" injury. The Plaintiff admits that, notwithstanding Defendant's alleged misrepresentations, Plaintiff paid the Debt directly with South Hills at an amount *lesser* than that amount listed in the Letter. *See* Compl. ¶¶ 13–15. The Complaint also concedes that, despite being "unauthorized," the credit card payments charged by IQ Data for the Debt were "blocked" by Plaintiff. *Id*. ¶ 18. "Thus, [Plaintiff] has not alleged, nor can she, that she suffered actual damages[.]" *Takano v. Nelson*, No. 2:19-CV-01932-BAT, 2020 WL 3403056, at *4 (W.D. Wash. June 19, 2020); *see also Lenzini*, 2021 WL 2139433 at *4 (granting motion to dismiss for lack of standing under the FDCPA where the plaintiff's allegation did not explain reliance); *Fleming*, 2021 WL 6063565 at *3 (same).

"Without more—without a concrete injury in fact—Plaintiff is 'not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

compliance with regulatory law (and, of course, to obtain some money via statutory damages).'" *Bassett II*, 60 F.4th at 1137 (quoting *TransUnion*, 141 S. Ct. at 2205–06). The Ninth Circuit would recognize this fatal flaw post-*TransUnion* in accordance with other circuits. *See, e.g.*, *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 775 (2023) (dismissing for lack of standing a similar FDCPA claim by a plaintiff in receipt of a debt-collection letter because "critically, [plaintiff] didn't make a payment, promise to do so, or otherwise act to her detriment in response to anything in or omitted from the letter"); *Shields v. Pro. Bureau of Collections of Maryland, Inc.*, 55 F.4th 823, 830 (10th Cir. 2022) (dismissing FDCPA claims for lack of standing because plaintiff "never alleged the letters caused her to *do* anything") (emphasis in original); *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 994 (11th Cir. 2020) (holding that plaintiffs lacked standing to bring FDCPA claims that debt-collection letters were misleading when "neither of [the plaintiffs] claims to have been *misled*") (emphasis in original).

**(2) The Relevant FDCPA Provisions Were Not Designed to Protect Plaintiff's Interests.**

Absent a "close relationship" between Plaintiff's harm and the harms that traditionally have provided a basis for an American lawsuit (*see Spokeo I*, 578 U.S. at 340), there can be no Article III standing. Indeed, *TransUnion* strongly suggests "that a historical or common-law analogue is *always* necessary for a court to find that an intangible harm is sufficiently concrete." *Fleming*, 2021 WL 6063565 at *4 (citing *TransUnion*, at 2204) (emphasis in original). This is "[b]ecause under Article III an injury in law is not an injury in fact," analysis of Plaintiff's alleged harm is required, and "only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Kola v. Forster & Garbus LLP*, No. 19-CV-10496 (CS), 2021 WL 4135153, at *8 (S.D.N.Y. Sept. 10, 2021) (quoting *TransUnion*, 141 S. Ct. at 2205)

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

(internal quotation marks and alterations omitted; emphasis in original). Relatedly, "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III," and courts may not "treat an injury as 'concrete' for Article III purposes based only on Congress's say-so." *Ibid*. (internal quotation marks and alterations omitted). As such, "substantive rights arising from Congressional statutes *must* have historical or common-law analogues[.]'" *Fleming*, 2021 WL 6063565 at *4 (quoting *TransUnion*, 141 S. Ct. at 2205) (emphasis added).

Even assuming *arguendo* that the analysis can continue, the outcome is the same–Plaintiff lacks Article III standing. "[C]ongressional judgment suggests a concern with '*genuinely misleading statements* that may frustrate a consumer's ability to intelligently choose her or her response' to a debt collector's communication." *Adams*, 836 F. App'x at 546 (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010)) (emphasis added). As previously discussed (*see* Part II.B.1, *supra*), "[t]he Complaint does not support an inference that [*Plaintiff*] *h*[*er*]*sel*f was ever at risk of detrimental reliance." *Id*. at 547 (emphasis in original).

**c) Step Two: The Alleged Violations Did Not Cause the Harm the FDCPA is Designed to Vindicate**

At step two, courts consider "whether the specific procedural violations alleged [] actually harm, or present a material risk of harm" to interests protected by relevant provisions of the FDCPA. *Spokeo II*, 867 F.3d at 1113. This inquiry essentially rises and falls with the second consideration to 'step one' of the *Spokeo II framework*—the relevant FDCPA provisions were not designed to protect Plaintiff's interests. *See Farmer*, 2022 WL 3974261 at *6 ("As discussed above, the FDCPA is designed to protect a consumer's ability to intelligently choose her or her responses. The purported misrepresentation here did not harm that protected

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

interests because Plaintiff did not and could not have changed her response even if the misrepresentation were corrected. She therefore lacks Article III standing.").

For the reasons previously discussed (*see* Part II.B.2, *supra*), Plaintiff has not alleged actual harm or a material risk of harm to the interests protected by the FDCPA. "[T]he FDCPA is designed to protect a consumer's ability to intelligently choose his or her responses." *Farmer*, 2022 WL 3974261 at *6. IQ Data's purported misrepresentations contained in the Letter did not harm those protected interests because its "supposed lack of clarity [did not] led [Plaintiff] to take any detrimental step, such as paying money she did not owe." *Smith v. GC Servs. Ltd. P'Ship*, 986 F.3d 708, 710 (7th Cir. 2021). "She therefore lacks Article III standing." *Farmer*, 2022 WL 3974261 at *6.

**III. THE COMPLAINT MUST BE DISMISSED IN ITS ENTIRETY**

When federal claims are dismissed for lack of constitutional standing, a court cannot retain supplemental jurisdiction over similar state law claims. *Warren v. Fox Fam. Worldwide*, Inc., 328 F.3d 1136, 1140 (9th Cir. 2003); *see Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001) ("If the district court dismisses all federal claims on the merits, it has discretion under § 1367(c) to adjudicate the remaining claims; if the court dismisses for lack of subject matter jurisdiction, it has no discretion and must dismiss all claims."); *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996) ("If the court dismisses plaintiff's federal claims pursuant to Rule 12(b)(1), then supplemental jurisdiction can *never* exist.") (emphasis in original). Since Plaintiff lacks Article III standing, this Court has no discretion to retain supplemental jurisdiction over Plaintiff's RFDCPA claim. The Complaint must therefore be dismissed in its entirety.

**CONCLUSION**

For the reasons explained above, Defendant IQ Data International, Inc. respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety.

Dated: May 22, 2023

GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ Joel D. Brodfuehrer*
Joel D. Brodfuehrer
Kendra S. Canape
Attorneys for Defendant
IQ DATA INTERNATIONAL, INC.

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614